INTERNATIONAL DISTRIBUTING CO.,
INC., Plaintiff,

v.

AMERICAN DISTRICT TELEGRAPH
COMPANY et al., Defendants.

Civ. A. No. 1373-72.

United States District Court,
District of Columbia.

Nov. 22, 1974.

Francis J. O'Toole and Milton Eisenberg, Fried, Frank, Harris, Shriver &

Kampelman, Washington, D. C., for International Distributing Co., Inc.

Peter Barnes, Washington, D. C., for American Dist. Tel. Co.; Leva, Hawes, Symington, Martin & Oppenheimer, Washington, D. C., of counsel.

James W. Greenfield, Washington, D. C., for George E. Hines.

## MEMORANDUM OPINION

WADDY, District Judge.

Plaintiff, a liquor wholesaler, brings this action for compensatory and punitive damages against American District Telegraph Company (ADT), a national company in the business of installing burglary, holdup and fire alarm systems for business concerns, and two employees of ADT. Plaintiff alleges that the individual defendants, Hines and Smith, stole approximately $57,000 worth of goods from plaintiff's warehouse while working for defendant ADT. Defendant has moved for summary judgment and plaintiff has filed opposition thereto.

The first three counts of the complaint allege theft, fraud, and breach of trust. In these counts plaintiff seeks to hold defendant ADT liable under the doctrine of *respondeat superior* for actions of its employees. Plaintiff maintains that the actions of the employees were within the scope of their employment since their employer, ADT put them in a position, clothed with apparent authority, to be on plaintiff's premises and effect the burglaries. ADT concedes, for the purpose of its motion, that the employees stole the property of plaintiff as alleged in the complaint. However, ADT denies liability and maintains that the actions of its employees were not within the scope of their duties and that ADT cannot be held vicariously liable for any theft, fraud, or breach of trust committed by its employees which occurred outside the scope of their employment, where there is no benefit to or ratification by ADT shown. Plaintiff agrees with ADT's position that it never ratified or in any way benefited from the actions of its employees in committing any theft, fraud, or breach of trust.

In determining whether a principal is liable for the torts of its employees, the District of Columbia adheres to the "purpose" test. The "purpose" test provides that where an act is committed by the servant (agent) solely for his own purpose, such act is outside the scope of his employment, unless the tort is actuated at least in part by a purpose to serve the principal; otherwise, the principal is not liable. Meyers v. National Detective Agency, 281 A.2d 435 (DCCA 1971). This is despite the fact that the employer may have put the employee in a peculiarly advantageous position, as a condition of his employment, to commit the tort. *See* Lyons v. Carey, D.D.C., 1974, 385 F.Supp. 272 (Parker, J.) and cases cited therein.

While the question is one of degree and normally a question of fact for the trier of fact, "if the departure from the employer's business is of a marked and decided character the decision of the question may be within the province of the court," Grimes v. B. F. Saul Co., 60 U.S.App.D.C. 47, 47 F.2d 409, 410 (1931); *accord*, District Certified TV Service, Inc. v. Neary, 122 U.S.App.D.C. 21, 350 F.2d 998 (1965) (relying on undisputed facts, the Court of Appeals reversed the judgment of the trial court that the defendant employee was engaged in master's business, distinguishing Dilli v. Johnson, 71 U.S.App.D.C. 139, 107 F.2d 669 (1939), the case chiefly relied on by plaintiff herein); Lyon v. Carey, *supra* (defendants' motion for judgment notwithstanding verdict granted where jury found that employee was acting within scope of employment). In Great A&P Tea Co. v. Aveilhe, 116 A.2d 162 (DCCA 1955), the District of Columbia Court of Appeals, reversing the lower court's denial of a directed verdict for A&P, in a case where two store clerks were engaging in frolic, and one of them fell into a customer, hurting her, stated that

"it would call for a distortion of the imagination to perceive of any motive, other than a personal one, which could be attributed to the act. Surely it was not one furthering [A&P's] interests. In turning aside from the duties assigned them by appellant, for however short a time, in order to engage in sport or playfulness for their own amusement, they were not for that time acting for their employer, and any resulting injuries are not such as to be answerable for by their employer." 116 A.2d at 165 (footnote omitted).

 Inasmuch as the delinquent employees herein acted on their own behalf, with no possible motive to serve their employer, ADT, and that ADT has not benefited from those actions nor ratified them, the "purpose" test is applicable herein and ADT is not liable under the doctrine of *respondeat superior* for the actions of its employees alleged in Counts I, II, and III of the complaint.

 Count IV alleges breach of contract. The contracts between the

parties herein specifically provided, *inter alia*, that defendant ADT was not an insurer of the success of its services, *e. g.*, preventing burglaries from taking place, but provided for liquidated damages in the event of damage caused by failure to supply the contracted services. These provisions are set forth in the margin below.[1] Nearly identical contract clauses have been held to be valid. *See, e. g.*, Bargaintown of D.C., Inc. v. Federal Engineering Company, Inc., of Washington, D. C., 309 A.2d 56 (DCCA 1973) and the cases cited therein. In *Bargaintown* the court said:

"In agreements of this nature, at the time the contract is executed it is not practicable to fix actual damage from a breach of the contract. Furthermore, it would also be unpredictable what portion of a loss would be attributable to a failure to perform the services agreed upon. [Citations omitted.]"

"The contract does not provide for liability arising from losses resulting from burglary but, rather, it is direct-

---

1. Paragraph 15 of the first contract between the parties, defendant's Exhibit A, dated March 16, 1961 provides that:
 "15. It is agreed by and between the parties hereto: that [ADT] is not an insurer; that the payments hereinbefore named are based solely on the value of the services provided for herein; that, from the nature of the services to be rendered, it is impracticable and extremely difficult to fix the actual damages, if any, which may proximately result from a failure on the part of [ADT] to perform any of its obligations hereunder, and a resulting loss to the [plaintiff], [ADT's] liability hereunder shall be limited to and fixed at a sum equal to ten percent of the annual service charge, hereinabove provided for, but in no event amounting to less than the sum of fifty dollars, as liquidated damages, and not as a penalty, and this liability shall be exclusive."
 Paragraph E of the subsequent contract between the parties, defendant's Exhibit B, dated March 20, 1970, provides that:
 "E. It is understood that [ADT] is not an insurer, that insurance, if any, shall be obtained by the [plaintiff] and that the amounts payable to [ADT] hereunder are based upon the value of the services and the scope of the liability as herein set forth and are unrelated to the value of [plaintiff's] property or the property of others located in [plaintiff's] premises. [ADT] makes no guaranty or warranty, including any implied warranty of merchantability or fitness that the system or services supplied, will avert or prevent occurrences or the consequences therefrom, which the system or service is designed to detect. [Plaintiff] does not desire this contract to provide for full liability of [ADT] and agrees that [ADT] shall be exempt from liability for loss or damage due directly or indirectly to occurrences, or consequences therefrom, which the service is designed to detect or avert; that if [ADT] should be found liable for loss or damage due to a failure of service or equipment in any respect, its liability shall be limited to a sum equal to ten percent of the annual service charge or $250, whichever is the greater, and that the provisions of this paragraph shall apply if loss or damage, irrespective of cause or origin, results directly or indirectly to person or property from performance or non-performance of obligations imposed by this contract or from negligence, active or otherwise, of [ADT], its agents or employees."

ed to damages from failure to perform the agreed services." 309 A.2d at 57. Since we have found, *supra*, that the delinquent employees were on a "frolic of their own" when they committed the burglaries, and not acting within the scope of their employment, and it appearing that this was at a time when they were responsible for supplying the contracted protective services to plaintiff, then it follows that ADT was not supplying the continuous burglary protection services which the parties had agreed upon by contract. The employees could not have been acting within and outside the scope of their employment at one and the same time. It is not disputed that this failure of service directly resulted in damage to plaintiff, *i. e.*, the loss occasioned by the burglaries. Therefore, it appearing that there exists no genuine issue of material fact and that plaintiff, not defendant, is entitled to judgment as a matter of law for defendant ADT's breach of their contracts, summary judgment will be entered for plaintiff on Count IV. This is despite the fact that plaintiff has not moved for summary judgment since the Court may, in its discretion, grant summary judgment for the non-moving party where there exists no issue of material fact and that party is entitled to judgment as a matter of law. 6 Moore's Federal Practice § 56.12.

 The remaining issue left for resolution is the proper measure of damages. Defendant seeks compensatory damages for the amount of his losses. This Court finds that ADT is not liable for compensatory damages equal to the amount of the losses from the burglaries since this would, in effect, make ADT an insurer of the success of its services. Such is specifically prohibited by the contracts. Plaintiff is therefore limited in its remedy to the liquidated damage clauses of the contracts for failure of ADT to perform the agreed services. As to liquidated damages plaintiff claims that it is entitled to such damages for each and every burglary, in a cumulative manner. Defendant calls

plaintiff's position absurd and claims that only one continuing breach occurred, if at all. Both parties rely on the wording of the contract and neither has cited authority for its position. It appears to the Court that since defendant ADT failed to provide the continuous burglary protection services for which it contracted, and that the contracts limit ADT's liability in the event of its failure to perform, that plaintiff can collect, as a matter of law, $50 in liquidated damages on the first contract and $396 in liquidated damages on the subsequent contract, and no more.

Count V demands punitive damages. However, "it is well settled that no punitive damages will be allowed for breach of contract, regardless of defendants' motive," except in extremely aggravated circumstances not present in this case. Minick v. Associates Inv. Co., 71 U.S.App.D.C. 367, 110 F.2d 267 (1940); *see* Brown v. Coates, 102 U.S. App.D.C. 300, 253 F.2d 36, 39 (1958). Therefore, plaintiff is not entitled to punitive damages and defendant is entitled to summary judgment on Count V.