# THE MORGAN COMPANY v. MINNESOTA MINING & MANUFACTURING COMPANY.

246 N. W. 2d 443.

September 17, 1976—No. 46232.

*Meagher, Geer, Markham, Anderson, Adamson, Flaskamp &*
*Brennan, R. Gregory Stephens, O. C. Adamson II, O'Connor &*

*Hannan, Joe A. Walters,* and *Kenneth B. Jones, Jr.,* for appellant.

*Richards, Montgomery, Cobb & Bassford, Greer E. Lockhart,* and *James B. Proman,* for respondent.

Heard before Todd, Yetka, and Scott, JJ., and considered and decided by the court en banc.

YETKA, JUSTICE.

This is an appeal from a judgment of the district court granting defendant's motion for partial summary judgment limiting its liability to $250. We affirm.

Plaintiff is a corporation engaged in the retail and wholesale jewelry business. In July of 1973 it entered into an agreement with defendant whereby defendant agreed to install and service a central station burglar alarm system at plaintiff's place of business. In return, plaintiff agreed to pay defendant $605 upon completion of the installation and $82 a month thereafter.

The system was apparently connected by two wires to a telephone wire distributor board located in a room adjacent to plaintiff's business office. The board contained numerous multicolored wires of various sizes. Attached to each of the two wires servicing plaintiff's system were identification tags. One tag said, "3M Alarm Service, Telephone line to Morgan's Jewelry—1740 black/yellow not used," and the other said, "3M Alarm Service—hold-up alarm, do not cut."

On or about February 3, 1974, plaintiff's business was burglarized. The investigating officer found that the alarm system had been bypassed by attaching "alligator clamps" to the tagged wires. As a result of the burglary, plaintiff sustained a loss of $957,740.10. Its insurer, Continental Casualty Company, reimbursed plaintiff for $610,000.

In October of 1974 plaintiff commenced this action against defendant for damages in the amount of its total loss, alleging negligence and breach of implied warranty. Defendant moved for partial summary judgment limiting recovery to $250 pur-

suant to the provisions of the agreement. In response, plaintiff moved to amend its complaint to include allegations of breach of express warranty, willful, wanton and intentional wrongful acts, and strict liability, and fraud and misrepresentation.

Defendant's motion was granted with respect to the allegations of negligence, breach of implied and express warranties, and strict liability, and denied as to the allegations of fraud and intentional wrongdoing. Plaintiff was permitted to amend its complaint to include the latter claims.

Plaintiff thereafter made a motion to have judgment entered pursuant to Rule 54.02, Rules of Civil Procedure, as to the grant of defendant's motion for partial summary judgment, claiming that important issues of law were involved which should be reviewed and resolved before proceeding with the balance of its action. The court denied the motion. Thereafter plaintiff dismissed its amended complaint, and directed the following letter to the district court clerk:

"In order that we may appeal Judge Stone's Order dated June 23, 1975 we have determined that we have to dismiss our Amended Complaint alleging intentional wrongdoing and fraud. Consequently, we have dismissed said Amended Complaint pursuant to Rule 41.01(1).

"Consequently, we have a final order from which to appeal.

"Therefore, please enter judgment on the Order dated June 23, 1975."

The clerk entered judgment August 8, 1975. The district court file does not contain any order from the court directing the entry of judgment.

 The only issue raised by the parties on appeal is the effect of the provisions in the agreement of the parties limiting defendant's liability to a maximum of $250. Before reaching the merits, however, there exist several questions regarding appealability.

In Financial Relations Board, Inc. v. Pawnee Corp. 308 Minn.

109, 240 N. W. 2d 565 (1976), we held that a "partial summary judgment"[1] granted pursuant to Rule 56.04, Rules of Civil Procedure, is final, and therefore appealable, only when the trial judge makes an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. Here the trial court refused to do just that. Plaintiff attempted to circumvent that refusal by dismissing that portion of its amended complaint to which the trial court's order for summary judgment did not attach, i. e., willful and wanton negligence, intentional misconduct, and fraud and misrepresentation, and directing the clerk to enter judgment. Whatever authority plaintiff relied on for that action certainly escapes us. While certain claims were thereby eliminated from its action, there nevertheless remained the issue of liability on the theories of ordinary negligence, warranty, and strict products liability. The order for summary judgment determined only the issue of damages. Under the circumstances of this case the only proper method by which plaintiff could secure review of the district court's decision was under Rule 105, Rules of Civil Appellate Procedure, pro-

---

[1] In 2 Hetland & Adamson, Minnesota Practice, Civil Rules Ann., at pp. 582 to 583 the authors point out that while the expression "partial summary judgment" is generally used in referring to a Rule 56.04 order, the rule "provides only for an order specifying what facts appear without substantial controversy and directing trial on the other parts of the action. * * * The order under Rule 56.04 is similar in nature and effect to a Rule 16 pre-trial order. * * * By recognizing Rule 56.04 as merely an order limiting the scope of the trial, difficulties regarding the appealability of partial judgments are removed." The authors are correct in concluding that questions of appealability would be resolved if a Rule 56.04 order is treated as a Rule 16 order. In Empire Fire & Marine Ins. Co. v. Hill, 287 Minn. 58, 176 N. W. 2d 757 (1970), this court held that a pretrial order specifying the measure of, and limitations upon, the amount of damages in the event of a recovery was not appealable. Moreover, if viewed as an *order* granting partial summary judgment, it still is nonappealable, LeRoy v. Figure Skating Club of Minneapolis, 281 Minn. 576, 162 N. W. 2d 248 (1968); Crum v. Anchor Casualty.Co. 264 Minn. 378, 119 N. W. 2d 703 (1963).

viding for discretionary review. Certainly it was not by securing an unauthorized judgment from the district court clerk. However, since the matter is now before us, and because defendant does not contest appealability, we shall treat the appeal as a request for discretionary review of the trial court's order for partial summary judgment and grant it.

■ Language limiting defendant's liability appears throughout the written agreement. In paragraph 1 setting forth defendant's obligations there is the following limitation:

"3M agrees to install or cause to be installed and service, *without liability and not as an insurer * * ** .*" (Italics supplied.)

Paragraph 5 provides:

"5. 3M's LIABILITY. 3M *does not* represent or warrant that the System may not be compromised or circumvented; that the System will prevent any loss by burglary, hold-up, fire or otherwise; or that the System will in all cases provide the protection for which it is installed or intended. Subscriber acknowledges that 3M is not an insurer, that Subscriber assumes all risk for loss or damage to Subscriber's premises or to its contents; that 3M has made no representation or warranties, nor has Subscriber relied on any representations or warranties, express or implied, except as set forth herein and Subscriber acknowledges that he has read and understands, particularly *paragraphs 10 and 21* of this Agreement which set forth 3M's obligation and maximum liability in the event of any loss or damage to Subscriber."

Paragraph 21, in addition to further language of limitation, specifically limits damages to a maximum amount of $250.

"21. 3M NOT AN INSURER AND LIQUIDATED DAMAGES. It is understood and agreed by and between the parties hereto that 3M is not an insurer. Insurance, if any, will be obtained by Subscriber. Charges are based solely upon the value of the services provided for, and are unrelated to the value to Subscriber's pre-

mises. The amounts payable by Subscriber are not sufficient to warrant 3M assuming any risk of consequential or other damages to Subscriber due to 3M's negligence or failure to perform. Subscriber does not desire this contract to provide for the liability of 3M and Subscriber agrees that 3M shall not be liable for loss or damage due directly or indirectly to any occurrence or consequences therefrom, which the service is designed to detect or avert. From the nature of the services to be performed, it is impractical and extremely difficult to fix the actual damages, if any, which may proximately result from the failure on the part of 3M to perform any of its obligations hereunder, or the failure of the System to properly operate with the resulting loss to Subscriber. If 3M should be found liable for loss or damage due to a failure on the part of 3M or its System, in any respect, its liability shall be limited to the refund to Subscriber of an amount equal to six (6) times the total monthly charge shown herein, or to the sum of Two Hundred Fifty ($250.00) Dollars, whichever sum shall be less, as liquidated damages and not as a penalty, and this liability shall be exclusive. The provisions of this paragraph shall apply in the event loss or damage, irrespective of cause or origin, results directly or indirectly to person or property from the performance or non-performance of the obligations set forth by the terms of this contract, or from negligence, active or otherwise, of 3M, its agents or employees."

Provisions limiting liability and the amount of damages under burglar alarm service agreements, such as contained in Paragraph 21, have been uniformly upheld, International Distrib. Co. Inc. v. American Dist. T. Co. 385 F. Supp. 871 (D. D. C. 1974); Better Food Markets v. American Dist. Tel. Co. 40 Cal. 2d 179, 253 P. 2d 10, 42 A. L. R. 2d 580 (1953); Niccoli v. Denver Burglar Alarm, Inc. 490 P. 2d 304 (Colo. App. 1971); Bargaintown of D. C., Inc. v. Federal Engineering Co., Inc. 309 A. 2d 56 (D. C. App. 1973); Nicholas v. Miami Burglar Alarm Co. 266 So. 2d 64 (Fla. App. 1972); Alan Abis, Inc. v. Burns Electronic Security Serv. Inc. 283 So. 2d 822 (La. App. 1973); Foont-Free-

denfeld Corp. v. Electro-Protective Corp. 126 N. J. Super. 254, 314 A. 2d 69 (1973), affirmed, 64 N. J. 197, 314 A. 2d 68 (1974); Wedner v. Fidelity Security Systems, Inc. 228 Pa. Super. 67, 307 A. 2d 429 (1973), affirmance by an equally divided court; Schepps v. American District Telegraph Co. of Texas, 286 S. W. 2d 684 (Tex. Civ. App. 1955).

The cited decisions apply both principles of liquidated damages and limitation of damages. We are inclined, as were the members of the Pennsylvania court in support of affirmance in Wedner v. Fidelity Security Systems, Inc. *supra*, to rely on the latter theory. They stated:

"The court below treated the matter of one of liquidated damages * * *.

"However, although he ably supported his judgment on the theory of liquidated damages, he did not have to decide the matter on the premise alone.

"Much reliance is placed upon the Restatement of Contracts § 339, but the appellant disregards Comment g, which provides: 'An agreement limiting the amount of damages recoverable for breach is not an agreement to pay either liquidated damages or a penalty. Except in the case of certain public service contracts, the contracting parties can by agreement limit their liability in damages to a specified amount, either at the time of making their principal contract, or subsequently thereto. Such a contract does not purport to make an estimate of the harm caused by a breach; nor is its purpose to operate in terrorem to induce performance.' It can hardly be contended that the words 'liability is and shall be limited' to the yearly service charge of $312 are anything but a limitation of liability and not really a liquidated damage clause. Surely, if the loss to the customer was $150, the expressed mutual assent was that recovery should be $150 and not $312.

"The fact that the words 'liquidated damages' were used in the contract has little bearing on the nature of the provision. It is well settled that in determining whether a particular clause calls for liquidated damages or for a penalty, the name given to

the clause by the parties 'is but of slight weight, and the controlling elements are the intention of the parties and the special circumstances of the case.' * * * The same principle applies here. Nor can it be argued that the use of these words automatically creates an ambiguity to be resolved against the appellee as the drafter of the instrument. The meaning of the words is clear—the fixed limit of liability was $312. We are, therefore, not dealing with a liquidated damage problem." 228 Pa. Super. 69, 307 A. 2d 431.[2]

We hold that the trial court was correct in granting partial summary judgment on the issue of damages with respect to ordinary negligence, express and implied warranty, and strict liability insofar as the latter term applied to product liability. We are not persuaded that the contract was unconscionable or against public policy under the circumstances of this case. Therefore, the order of the trial court is affirmed and the case may proceed to trial on the remaining issue of liability.

■ With respect to those claims which have been dismissed by plaintiff—willful and wanton negligence, intentional misconduct, and fraud and misrepresentation—it may pursue those claims to a full recovery since the limitation of damages does not apply to those claims.

Affirmed.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.

---

[2] This court has recognized the validity of exculpatory provisions in other contexts where they do not violate some established public policy, Great Northern Oil Co. v. St. Paul Fire & Marine Ins. Co. 291 Minn. 97, 189 N. W. 2d 404 (1971); Independent School Dist. No. 877 v. Loberg Plumbing & Heating Co. 266 Minn. 426, 123 N. W. 2d 793 (1963); Weirick v. Hamm Realty Co. 179 Minn. 25, 228 N. W. 175 (1929).