Calvin HOUGHLAND and wife
Josephine Houghland,
Plaintiffs/Appellees,

v.

SECURITY ALARMS & SERVICES,
INC., Defendant/Appellant.

Supreme Court of Tennessee,
at Nashville.

July 5, 1988.

Rehearing Denied Aug. 15, 1988.

John E. Brandon, Daniel R. Loftus, Steven D. Parman, John Carlson, Watkins, McGugin, McNeilly & Rowan, Nashville, for defendant/appellant.

Jonathan M. Harwell, Glenn B. Rose, Craig V. Gabbert, Jr., Harwell, Martin & Stegall, Nashville, for plaintiffs/appellees.

## OPINION

HARBISON, Chief Justice.

Appellees brought this action against appellant to recover losses suffered in a burglary of their home which occurred on the evening of August 31, 1980. The complaint, as amended, alleged numerous theories of liability, including breach of contract, breach of warranties, negligence, intentional misrepresentation, negligent misrepresentation, and deceptive trade practices under the Tennessee Consumer Protection Act, T.C.A. §§ 47–18–101 through 117.

The trial judge directed a verdict on the Consumer Protection Act claim but submitted the case to the jury as to all of the other claims. The jury returned a general verdict in favor of the plaintiffs in the amount of $100,000. The Court of Appeals held that the evidence was insufficient to support the jury verdict on some of the claims and that limitations in the contract between the parties would govern other claims. It held that there was sufficient evidence of negligent misrepresentation to sustain the verdict for the plaintiffs free of the contractual limitations. Finding error in the admission of evidence with respect to the amount of the award, however, the Court of Appeals reversed for a new trial limited to the question of damages only.

After carefully reviewing the record, we agree with the Court of Appeals that there was insufficient evidence of intentional tort or deliberate fraud, and in our opinion

there was no basis for the submission of these issues to the jury. Further, in our opinion there is no evidence of any negligent material misrepresentation of a past or existing fact which, if made, would be sufficient to vitiate the contract or to allow a recovery free from its limitations with respect to coverage and damages. In our opinion the only tenable theories upon which sufficient evidence was offered to make a jury issue at trial were those alleging breach of contract or negligence in performance of the contract. These claims, even if resolved in favor of the appellees, would be subject to the exculpatory and limiting provisions of the contract. There is no evidence in the record which would justify a rescission of the agreement between the parties, and none was sought at trial. In our opinion the trial judge correctly directed a verdict on the count alleging violation of the Consumer Protection Act.

■ There is almost no dispute as to the material facts in the case. In 1977 Mr. and Mrs. Houghland entered into a contract with appellant Security Alarms and Services, Inc. under which the latter agreed to provide security equipment and services for the home of appellees. In addition to alarms installed in the home, the equipment consisted of a "loop" system connecting the home of appellees to a central office, or alarm station, operated by appellant. This service was tied into the local telephone system, and the homes and businesses of a number of other customers were also part of the system. If an alarm were transmitted to the office of appellant from the customers on this "loop", personnel at the central office were unable to identify the precise source of the alarm. It was necessary for appellant to send a service representative to the premises of each customer to discover the origin of an alarm.

There is no claim that the original system was improperly installed or that there was any misrepresentation made concerning it. The original contract recited that Security Alarms was not in the business of writing burglary or other kinds of insurance. The subscribers expressly and unconditionally released Security Alarms from all hazards which were covered by insurance. The contract also contained a liquidated damages clause which fixed the liability of appellant at a specified sum. This amount was agreed upon as liquidated damages and as the exclusive remedy unless the subscriber desired the appellant to assume greater liability on a graduated scale of increasing rates. No such additional coverage was purchased by the subscribers.

About two years later the property manager for Mr. and Mrs. Houghland contacted a sales representative of appellant and asked the latter to meet him at the Houghland premises to examine the equipment then installed and to discuss the possibility of additional equipment which would provide further protection from both fire and burglary. On September 19, 1979, the sales representative of appellant wrote to the Houghland agent describing an additional telephone line security device, called a "transceiver", which would provide further security in that it would "call" appellant's office immediately if the telephone line should be cut or there should be an attempt to compromise it. In the letter appellant's employee also stated that it was the policy of Security Alarms and Services, Inc. "to dispatch the appropriate law enforcement department on all burglar alarm signals and the appropriate fire department on fire alarm signals, received at our Central Station." The letter pointed out that appellant could not and did not assume responsibility for the actions of police or fire department dispatchers to have their representatives respond to alarms.

The letter proposed installation of the security transceiver. The parties also negotiated for additional fire alarm equipment which is not involved here.

On October 2, 1979, a rider to the 1977 agreement was executed, calling for installation of the additional security equipment. The equipment was installed shortly thereafter and apparently operated as represented and without difficulty for more than nine months.

During those nine months three burglar alarm signals were received from the

Houghland residence at the central office of appellant, these occurring on October 27, 1979, July 2, 1980, and August 26, 1980, the latter being only five days before the incident out of which this suit arose.

On each of these occasions, as well as on an earlier occasion in September 1979, appellant's representatives, upon receiving a burglar alarm signal at the central office, notified appropriate police authorities; and police officers were dispatched in each instance. On all four occasions, however, the alarms were false, apparently having been set off accidentally by members of the family; and on three of the occasions, the police officers were recalled by radio before they ever reached the Houghland premises.

It is uncontradicted in the record that it was the firm and established policy of appellant to dispatch the police whenever a burglar alarm signal was received at the central office. As stated previously, the appellant had done so on four occasions prior to the incident in question, three of them occurring after installation of the additional equipment under the 1979 contract rider.

This evidence was uncontradicted and unimpeached. There was no basis in the record for the trial judge to instruct the jury that the plaintiffs might recover upon a theory of negligent misrepresentation in the inducement of the contract or "promissory fraud"—entering into a contract with no intention to perform it.

On the night of August 31, 1980, a signal was received in the central office of appellant at about 9:29 p.m. which did not appear to the personnel then on duty to be a burglar alarm. Instead, it appeared to them to be a signal indicating a problem with the telephone lines in the Brentwood area where the property of appellees is situated. The central office equipment of appellant was closely tied to and depended upon the telephone system. When there was difficulty with the telephone lines, from bad weather or other causes, the alarm signals could also be accidentally activated or the alarm service could be interrupted.

About twelve minutes after the line light went out on the transceiver for the Houghland residence, another signal was received that indicated that the entire loop had "gone open." Thereafter, a signal was received from another transceiver on the system at a residence located some distance from the Houghland residence.

An armed service representative of appellant was dispatched to check each of the premises serviced on this loop to try to locate the difficulty. He had gone to three other locations before reaching the Houghland residence at about 10:25 p.m., or a little less than an hour after the original signal had been received at the central office. He walked around the house using his flashlight but did not detect any sign of burglary or other difficulty.

The appellees had declined to provide appellant or its representatives with keys to their residence, as they might have done under the terms of their contract. Instead they had provided a list of persons to be notified by telephone if the Houghlands were not at home when any kind of fire or burglary signal was received at the central office. Representatives of appellant called the son-in-law of the Houghlands, who lived nearby, and told him that there appeared to be difficulty with the telephone lines in the area. They asked whether he wished to meet another service representative of appellant at the premises in order that the latter might enter the home and check the alarm system. The son-in-law declined, stating that he felt that the matter could wait until the following morning. Mr. and Mrs. Houghland were out of the state on the evening in question.

Early the next morning a servant entering the home found that a break-in had occurred. He notified the police and other Houghland employees. It was found that entry had been made into the home on the third floor through a ladder which had later been thrown into the swimming pool. A telephone wire some nine feet above the ground had been cut.

The burglars had stolen a large amount of jewelry and other personal property. This loss was partially covered by insur-

ance carried by appellees, and the latter received a total of $81,144 from their insurance carriers for the loss sustained. Appellees offered evidence that the value of jewelry and silver taken from the residence exceeded $185,000.

As stated previously, in our opinion, the evidence, taken most favorable to the appellees, might support a finding that the appellant and its employees had breached their contract or that they were negligent in responding to the alarm signals. Of course, a jury might also conclude that these employees had made a reasonable decision to have the premises on the loop examined before calling the police in view of the ambiguity of the signals actually received. Beyond this, in our opinion, none of the other theories advanced by appellees were supported by sufficient evidence to warrant submission to the jury; and the case should be re-tried without reference to claims of misrepresentation, intentional or otherwise.

As stated previously, the Court of Appeals held that there was no evidence of intentional fraud, deceit, or intentional misrepresentation. We agree with that conclusion. In the absence of that kind of tortious conduct, in our opinion, the parties are bound by the contractual provisions contained in the 1977 agreement, which was supplemented and amended by the 1979 rider. We agree with the Court of Appeals that the 1979 rider cannot be considered a separate and independent agreement, devoid of the exculpatory and limiting provisions contained in the original agreement of 1977. It was nothing more than a rider, and it is governed by the same terms as those originally agreed upon in 1977.

There is nothing in public policy to render inoperative or nugatory the contractual limitations contained in the 1977 agreement. Limitations against liability for negligence or breach of contract have generally been upheld in this state in the absence of fraud or overreaching. *See generally Affiliated Professional Services v. South Central Bell Telephone Co.,* 606 S.W.2d 671 (Tenn.1980); *Empress Health and*

*Beauty Spa, Inc. v. Turner,* 503 S.W.2d 188 (Tenn.1973); Restatement (Second) of Contracts § 195 (1981). In many instances such agreements will not be enforced as to licensed professional personnel. *See Olson v. Molzen,* 558 S.W.2d 429 (Tenn.1977). There are also statutes regulating some commercial activities which render such agreements invalid or of limited effect. *See* T.C.A. § 62–6–123 (dealing with construction and building contracts); T.C.A. § 66–28–203(a) (dealing with certain provisions in residential leases). Appellees have not contended that any of these statutory provisions are applicable to the operations of appellant; nor, indeed, have they insisted that the contractual limitations were void. Instead, appellees have insisted that the contract provisions were inapplicable because of misrepresentations made by the sales representative of appellant when the 1979 contract rider was executed. The record does not support appellee' insistence of a misrepresentation in the inducement of the 1979 rider.

Limitations such as those contained in the present contract have generally been deemed reasonable and have been sustained in actions against the providers of burglary and fire alarm services. *See Ace Formal Wear v. Baker Protective Service, Inc.,* 416 So.2d 8, 9 (Fla.App.1982); *Vallance & Co. v. De Anda,* 595 S.W.2d 587, 590 (Tex.Civ.App.1980), and cases cited therein. Such clauses do not ordinarily protect against liability for fraud or intentional misrepresentation. *See Luria & Son, Inc. v. Honeywell, Inc.,* 460 So.2d 521 (Fla.App.1984); *Morgan Co. v. Minnesota Mining & Manufacturing Co.,* 310 Minn. 305, 246 N.W.2d 443, 448 (1976). In the latter case the exculpatory clauses were sustained except for claims of intentional wrongdoing and fraud.

Apparently the Court of Appeals concluded that there were negligent misrepresentations in the inducement of the contract which would be sufficient to rescind the contract or otherwise render its provisions inapplicable. This was the effect of the jury instructions given by the trial judge in the present case. We respectfully

disagree. We do not find in this record any evidence which would support such a jury instruction by the trial judge or such a conclusion as found by the Court of Appeals.

■ For many years Tennessee has recognized the tort of negligent misrepresentation in connection with business or professional persons who carelessly or negligently supply false information for the guidance of others in their business transactions. *See Stinson v. Brand,* 738 S.W.2d 186, 190 (Tenn.1987); *Tartera v. Palumbo,* 224 Tenn. 262, 453 S.W.2d 780 (1970). This theory of law, however, does not convert every breached promise or contractual undertaking into a basis for the rescission of otherwise valid contracts and the abrogation of their terms. As stated in Keeton, *et. al., Prosser and Keeton on The Law Of Torts,* § 109 (5th ed. 1984):

> When a promise is made in good faith, with the expectation of carrying it out, the fact that. it subsequently is broken gives rise to no cause of action, either for deceit, or for equitable relief. Otherwise any breach of contract would call for such a remedy.

In the present case the Court of Appeals found that the evidence was sufficient to establish a negligent misrepresentation of the policy and practice of reporting burglar alarms to the police and of the capability of the proposed equipment to identify appellees' home as the scene of an intrusion. We respectfully disagree. We find that there was no evidence of misrepresentation concerning the policy and practice of appellant which, as previously stated, was carried out in every instance in which an identifiable burglar alarm was received. Further, the equipment did, in fact, report a signal to the central office on the occasion in question as well as several previous ones. In our opinion, as previously stated, any mistake or misjudgment by the central office personnel would not amount to a misrepresentation in the inducement which would vitiate or render inoperative the contractual provisions between these parties.

■ The Court of Appeals reversed the judgment of the trial court as to the amount of the award upon the ground that there was insufficient proof that the damage appraisals contained in the record covered the items stolen in the burglary. In this regard we are of the opinion that the Court of Appeals was in error. There was, under the testimony of Mr. Houghland himself, sufficient proof to identify the property appraised as that which had been the subject of the theft.

The judgment of the Court of Appeals is reversed, and the cause is remanded to the trial court for a new trial as to issues concerning breach of contract or negligence in its performance, subject to the contract provisions themselves as to limitations of liability or hazards covered by insurance. Costs incident to the appeal will be taxed to appellees. All other costs will be fixed by the trial court.

FONES, COOPER, DROWOTA and BROCK, JJ., concur.

### OPINION ON PETITION FOR REHEARING

Appellees have filed a petition for rehearing in the above case. After consideration of same, the Court is of the opinion that the petition is not well taken, and it is accordingly denied at the cost of appellees.