# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT JACKSON

_____

|  |  |  |
|---|---|---|
| **JOHN H. FOURNIER,** | ) | Shelby County Circuit Court |
|  | ) | No. 61433 T.D. |
| Plaintiff/Appellant. | ) |  |
|  | ) |  |
| VS. | ) | C. A. NO. 02A01-9602-CV-00082 |
|  | ) |  |
| **M. V. TICHENOR and** | ) |  |
| **BOWLING, BOWLING &** | ) |  |
| **ASSOCIATES,** | ) |  |
|  | ) |  |
| Defendants/Appellees. | ) |  |
|  | ) |  |

**FILED**

**Dec. 2, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

_____

From the Circuit Court of Shelby County at Memphis.
**Honorable Robert A. Lanier, Judge**

**John D. Horne**,
THE WINCHESTER LAW FIRM, Memphis, Tennessee
Attorney for Plaintiff/Appellant.

**James L. Kirby**,
HARRIS, SHELTON, DUNLAP & COBB, Memphis, Tennessee
Attorney for Defendants/Appellees.

OPINION FILED:

**AFFIRMED AND REMANDED**

**FARMER, J.**

**HIGHERS, J.** : (Concurs)
**LILLARD, J.** : (Concurs)

Plaintiff-Appellant, John H. Fournier ("Fournier), appeals the order of the trial court entering summary judgment in favor of Defendants-Appellees, M. V. Tichenor ("Tichenor") and Bowling, Bowling & Associates ("Law Firm"), on Fournier's claims for negligent misrepresentation and breach of contract.

In March 1993, Fournier entered into a consignment agreement with Defendants' client, Michael Grollnek ("Grollnek"), whereby Grollnek agreed to sell items from Fournier's Napoleonic art collection on a consignment basis. As a condition of entering into the consignment agreement, Fournier insisted that a UCC-1 financing statement be filed on his behalf in order to protect his property rights in the consigned items. Grollnek, therefore, asked his attorney, Tichenor, an associate of the Law Firm, to prepare a letter stating that a UCC-1 financing statement was being filed on Fournier's behalf. In accordance with Grollnek's request, on March 17, 1993, Tichenor faxed a letter on the Law Firm's letterhead to Grollnek which stated that "[t]his letter will confirm that shortly, we will be filing a UCC-1 on behalf of John Fournier." Grollnek, in turn, sent a copy of the letter to Fournier.

In reliance upon Tichenor's representation that a UCC-1 financing statement would be filed on his behalf, Fournier signed the consignment agreement and delivered the items from his collection to Grollnek. Subsequently, Tichenor prepared a UCC-1 financing statement, which Fournier signed and returned at Tichenor's request. Tichenor also obtained Grollnek's signature on the UCC-1, and he informed Grollnek that a filing fee of $242.04 would be required in order to file the financing statement. Grollnek, however, failed to provide the required filing fee, and, consequently, Tichenor never filed the UCC-1 on behalf of Fournier.

Grollnek placed the items from Fournier's collection for sale in the Empire Gallery, which was located in the Peabody Hotel in Memphis.[1] Grollnek then sold some of the items to members of the public who came into the gallery, but, by his own admission, Grollnek never paid Fournier for any of the items sold. In August 1993, upon learning of Grollnek's possible breach of the consignment agreement, Fournier contacted Tichenor by telephone to verify that a UCC-1 had

---

[1]The Empire Gallery was a subsidiary of Napoleonic Promotions, Inc., of which Grollnek was managing director.

been filed on Fournier's behalf. Tichenor responded by letter dated August 11, 1993, in which he informed Fournier that the UCC-1 had not been filed because the Law Firm never received a check for the filing fee from Grollnek.

Fournier subsequently filed this lawsuit against Tichenor and the Law Firm asserting, *inter alia*, the theories of negligent misrepresentation and breach of contract. The gravamen of Fournier's complaint was that he had suffered damages because, as a result of Tichenor's failure to file the UCC-1 financing statement as promised, Fournier lost the ability to regain possession of the consigned items from third parties who had purchased the items from Grollnek. On appeal, Fournier contends that the trial court erred in granting Defendants' motion for summary judgment, in light of the affidavits and depositions filed in this case, as well as the legal theories alleged in Fournier's complaint.

Summary judgment is appropriate "only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Byrd v. Hall,* 847 S.W.2d 208, 214 (Tenn. 1993). Applying this standard, we affirm the trial court's entry of summary judgment because the undisputed evidence in this case demonstrates that Fournier's damages were not caused by Tichenor's failure to file the UCC-1 financing statement. We reach this conclusion because, even if Tichenor had timely filed the UCC-1 financing statement on Fournier's behalf, Fournier would not have had the right to regain possession of the items sold by Grollnek to third parties.

Under the Uniform Commercial Code (UCC), a buyer in the ordinary course of business "takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." T.C.A. § 47-9-307(1) (Supp. 1995). Section 47-1-201(9) of the UCC defines a buyer in the ordinary course as "a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind." T.C.A. § 47-1-201(9) (Supp. 1995). Under the UCC, "[a]ny entrusting of possession of goods to a merchant who deals in goods of that kind gives [the merchant] power to transfer all rights of the entruster to a buyer in ordinary course of business." T.C.A. § 47-2-403(2)

(Supp. 1995).  In an entrustment situation, therefore, "[a] buyer in the ordinary course of business takes good title to the goods even though the sale by the merchant violates his agreement with the true owner." *Mid-Tenn. Ford Truck Sales, Inc. v. Lease Plan USA, Inc.,* 1993 WL 266865, at *2 (Tenn. App. 1993).

In the present case, the evidence was undisputed that Fournier entrusted possession of the items in his Napoleonic collection to Grollnek.  As the operator of a gallery which dealt in Napoleonic art, therefore, Grollnek had the power to transfer all rights of Fournier to buyers in the ordinary course of business.  *See* T.C.A. § 47-2-403(2) (Supp. 1995).  The record contains no evidence to contradict Grollnek's testimony that the members of the public who purchased the items from the Empire Gallery were buyers in the ordinary course of business.[2]  Accordingly, even if Tichenor's filing of the UCC-1 financing statement would have perfected Fournier's security interest in the consigned items, Fournier would have no cause of action against the third parties to whom Grollnek sold the items because the third parties, as buyers in the ordinary course, took the items free of Fournier's security interest.[3]  *See Jernigan v. Ham,* 691 S.W.2d 553, 556 (Tenn. App. 1984).

The trial court's order granting Defendants' motion for summary judgment is affirmed.

Costs of this appeal are taxed to Fournier, for which execution may issue if necessary.

_____

FARMER, J.

_____

[2]*See Byrd v. Hall,* 847 S.W.2d 208, 215 (Tenn. 1993) ("When the party seeking summary judgment makes a properly supported motion, the burden then shifts to the nonmoving party to set forth specific facts, not legal conclusions, by using affidavits or the discovery materials listed in Rule 56.03 [T.R.C.P.], establishing that there are indeed disputed, material facts creating a genuine issue that needs to be resolved by the trier of fact and that a trial is therefore necessary. The nonmoving party may not rely upon the allegations or denials of his pleadings in carrying out this burden as mandated by Rule 56.05.").

[3]Alternatively, affirmance of the trial court's judgment appears to be required by the Supreme Court's decision of *Houghland v. Security Alarms & Services,* 755 S.W.2d 769 (Tenn. 1988), wherein the Court stated that, "[w]hen a promise is made in good faith, with the expectation of carrying it out, the fact that it subsequently is broken gives rise to no cause of action, either for deceit, or for equitable relief." *Houghland,* 755 S.W.2d at 774 (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 109 (5th ed. 1984)).

_____
HIGHERS, J. (Concurs)


_____
LILLARD, J. (Concurs)