## Maher *v.* Chapins Lunch Company, Appellant.

Argued May 1, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Samuel G. Wagner*, with him *Leo A. Nunnink*, for appellant.

*Charles Nussbaum*, for appellee.

OPINION BY JAMES, J., October 2, 1935:

Plaintiff sued to recover the value of an overcoat taken from a restaurant operated by the defendant while plaintiff was eating his lunch. Plaintiff, who had been a regular patron of the restaurant, narrated the circumstances under which the coat was taken as follows (p. 8a): "About noon my assistant manager and myself went to lunch down at Chapin's Lunch Room; on the first floor they have a circular counter with seats all around the counter and hooks back of the seats. I went in and went to the left at first; it was crowded. There were several people waiting to sit down, and the manager said: 'Hang your coat over there and you will get a seat as soon as someone gets up,' which I did, and the first people that got up were possibly ten or fifteen feet away from where I hung up my coat. I ate my lunch and turned around and arose to get my coat, and found the coat was gone and only my hat remained. The gentleman with me, his coat was still there. I looked around and could not find my coat and reported it immediately to the manager, and he helped me to look through the various coats of which there were forty-five (45) or fifty (50). He suggested that somebody might have taken it by mistake; to come back later or call him up. I called him about 2:30 or 3:00 o'clock and he reported no coat had been returned, but thought perhaps a little later it might be there that afternoon. Before I closed the office I called him again, but the coat had not been returned." He further testified that no one at the restaurant took charge of the garment and that no check room or attendant was provided to take care of wearing apparel. Testimony was offered by the defendant that signs were posted on the walls and notice was given in the menu cards that the Chapin Restaurant would not be responsible for patrons' personal property. Defendant moved for a directed verdict, and the case was submitted to the jury

on the question: Did the defendant use ordinary care in the protection of plaintiff's property? The jury found for the plaintiff, and defendant now appeals from the refusal to grant a new trial.

The theory upon which plaintiff relied was that the relationship between the parties was one of bailment for mutual benefit. "The keeper of a restaurant or eating house is not an insurer of the property of his patrons. His liability for the loss of such property depends on whether or not a bailment is established." 32 C. J. 558.

"A bailment may be defined as a delivery of personalty for some particular purpose, or on mere deposit, upon a contract, express or implied, that after the purpose has been fulfilled it shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions, or kept until he reclaims it, as the case may be." 6 C. J. 1084. In the case of Trunick v. Smith, 63 Pa. 18-23, Justice AGNEW defines a bailment in the following language: "Blackstone in his Commentaries, vol. 2, 451, defines a bailment to be a delivery of goods in trust, upon a contract, expressed or implied, that the trust shall be faithfully executed on the part of the bailee. This definition is adopted by Mr. Story, Bailments s. 3, with the addition, that it must be for some special object or purpose. Chancellor KENT, in his Commentaries, vol. 2, sec. 40, gives the definition of Blackstone with the addition: 'and the goods restored by the bailee, as soon as the purpose of the bailment shall be answered,'" or as said by Mr. Justice STEWART in McBride v. McNally, 243 Pa. 206-209, 89 A. 1131: "Bailment ordinarily implies the delivery of some article of personal nature for some purpose on contract that after the purpose has been fulfilled it shall be returned to the bailor. Without delivery over there can be no bailment; the contract is to return the thing delivered when the purpose has been served."

"An actual bailment exists where there is either (a) actual delivery consisting in giving to the bailee or his agent the real possession of the chattel, or (b) a constructive delivery consisting of any of those acts which, although not truly comprising real possession of the goods transferred, have been held by legal construction equivalent to acts of real delivery. A constructive bailment arises where the person having the possession of the chattel holds it under such circumstances that the law imposes upon him the obligation to deliver it to another." Gilson v. Penna. R. R. Co., 92 A. 59, 86 N. J. L. 446. In the instant case we have no proof of actual or constructive delivery of the overcoat to the defendant; the mere direction of the manager to "Hang his overcoat over there," did not constitute such a delivery of the exclusive possession of the overcoat to the restaurant keeper as to constitute the relation of bailor and bailee.

In the cases of Wentworth v. Riggs, 143 N. Y. S. 955 (1933); Apfel v. Whyte's Inc., 180 N. Y. S. 713, 110 Misc. (N. Y.) 670 (1920); Gilson v. Penna. R. R. Co., supra, involving the liability of a restaurant keeper to customers for articles of personal clothing, the general test applied was that the articles were not in the exclusive possession of the restaurant keeper, and therefore, no bailment relation existed. In the recent case of Nolde v. WDAS Station, 108 Pa. Superior Ct. 242, 164 A. 804, Judge STADTFELD said: "It is similar to the case of one who hangs his coat on a rack or hook in a restaurant where many people resort. It would not be contended that the proprietor of the restaurant would be responsible for the loss or theft of a coat under such circumstances." No bailment relation having been established and as there was no proof of negligence, defendant was not liable.

Defendant having appealed from the refusal to grant a new trial (no motion for judgment non obstante vere-

dicto having been filed), we are confined to granting the prayer of his motion.

Judgment reversed with a venire facias de novo.