Wedner, Appellant, *v.* Fidelity Security Systems, Inc.

Argued November 15, 1972. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ. (PACKEL, J., absent).

*John E. Evans, Jr.,* with him *Evans, Ivory & Evans,* for appellant.

*David H. Trushel,* with him *Wayman, Irvin, Trushel & McAuley,* for appellee.

OPINION PER CURIAM, June 14, 1973:

The six judges who heard this appeal being equally divided, the judgment is affirmed.

OPINION BY WATKINS, J., IN SUPPORT OF AFFIRM-ANCE:

This is an appeal from the judgment of the Court of Common Pleas of Allegheny County entered after a non-jury trial on a burglar alarm system contract, in the amount of $312.00 in favor of Charles Wedner, doing business as Wedner Furs, the appellant, and against Fidelity Security Systems, Inc., the appellee.

This action involved a contract for a burglar alarm system. There was a burglary involving the loss of $46,180.00 in furs. It was first tried by Judge SILVES-TRI without a jury and a nonsuit resulted. The nonsuit was removed and a new trial granted. It was then tried by Judge McLEAN without a jury and although he found the contract had been negligently breached, the appellant was only entitled to liquidated damages in the amount of $312.00 by the terms of the contract. Exceptions were filed and the Court En Banc by a majority vote dismissed the exceptions. This appeal followed.

The appellant suffered a loss of $46,180.00 due to the appellee's wrongful failure to perform under a bur-glary protection service contract, but because of a con-tract provision he was allowed recovery of only $312.00. The contract provided that the appellee, FEPS, was not to be liable for any loss or damages to the goods of the appellant and then continued: "If there shall, notwith-standing the above provisions, at any time arise any liability on the part of FEPS by virtue of this agree-ment, whether due to the negligence of FEPS or other-wise, such liability is and shall be limited to a sum equal in amount to the yearly service charge hereunder, which sum shall be paid and received by the Subscriber as liquidated damages." The appellant contends that this is an unreasonable forecast of the probable dam-ages resulting from a breach of the contract.

The court below treated the matter of one of liquidated damages and said: "In his decision the trial judge pointed out, and the parties agree, that there is a well settled general principle that courts will not give effect to a provision in a contract which is a penalty, but will give effect to a provision in a contract which is deemed a liquidated damages provision. The trial judge further noted that deciding which is which can be difficult. In the absence of any Pennsylvania cases making the determination in the context of a contract for burglary alarm protection, the trial judge determined that the instant provision was one for liquidated damages, rather than a penalty, on the reasoning and analysis of A. G. Schepps v. American District Telegraph Company of Texas, 286 S.W. 2d 684 (Texas Court of Appeals) (1956); Better Food Markets v. American Dist. Tel. Co., 40 Cal. 2d 179, 353 P. 2d 10 (1953); Atkinson v. Pacific Fire Extinguisher Company, 40 Cal. 2d 192, 253 P. 2d 18 (1953)."

However, although he ably supported his judgment on the theory of liquidated damages, he did not have to decide the matter on the premise alone.

Much reliance is placed upon the Restatement of Contracts §339, but the appellant disregards Comment g, which provides: "An agreement limiting the amount of damages recoverable for breach is not an agreement to pay either liquidated damages or a penalty. Except in the case of certain public service contracts, the contracting parties can by agreement limit their liability in damages to a specified amount, either at the time of making their principal contract, or subsequently thereto. Such a contract does not purport to make an estimate of the harm caused by a breach; nor is its purpose to operate in terrorem to induce performance." It can hardly be contended that the words "liability is and shall be limited" to the yearly service charge of $312 are

anything but a limitation of liability and not really a liquidated damage clause. Surely, if the loss to the customer was $150, the expressed mutual assent was that recovery should be $150 and not $312.

The fact that the words "liquidated damages" were used in the contract has little bearing on the nature of the provision. It is well settled that in determining whether a particular clause calls for liquidated damages or for a penalty, the name given to the clause by the parties "is but of slight weight, and the controlling elements are the intention of the parties and the special circumstances of the case." *Laughlin v. Baltalden, Inc.,* 191 Pa. Superior Ct. 611, 617, 159 A. 2d 26, 29 (1960). The same principle applies here. Nor can it be argued that the use of these words automatically creates an ambiguity to be resolved against the appellee as the drafter of the instrument. The meaning of the words is clear—the fixed limit of liability was $312. We are, therefore, not dealing with a liquidated damage problem.

The real question is whether any reason exists why the limitation on liability should not be given effect. There is no doubt as to its legality as between ordinary business men. "The *validity* of a contractual provision which exculpates a person from liability for his own acts of negligence is well settled if the contract is between persons relating entirely to their own private affairs." *Dilks v. Flohr Chevrolet,* 411 Pa. 425, 433, 192 A. 2d 682, 687 (1963). That was the common law rule and is illustrated by *Bechtold v. Murray Ohio Mfg. Co.,* 321 Pa. 423, 428-9, 184 A. 49, 51 (1936), where the court stated: "It is not suggested that the transaction is affected by fraud or mistake. The parties agree that they said what they meant. Both parties and their counsel participated in stating the terms of the con-

tract. The seller says that it has performed but, if it has not done so in the respect complained of, the buyer has agreed that he shall have no right to recover damages." In accord is the Restatement of Contracts §§574, 575. It is also the rule with respect to the sale of goods under the Uniform Commercial Code, 12A P.S. §2-719 (3), which provides: "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not." The common law exception as to public utilities, *Turek v. Pennsylvania R.R. Co.*, 361 Pa. 512, 64 A. 2d 779 (1949), has been expanded to some extent by *Thomas v. First Nat. Bank of Scranton*, 376 Pa. 181, 185-6, 101 A. 2d 910, 912 (1954), where the court concluded: "Banks, like common carriers, utility companies, etc., perform an important public service. The United States Government and the Commonwealth respectively stipulate how banks under their respective jurisdictions shall be incorporated and organized. All banks are examined and supervised by government or state officers with extreme particularity. The United States insures deposits in banks up to a stipulated amount. If a person desires to deposit money in a bank, necessarily, he is relegated to a governmental or state regulated banking institution. The situation of a depositor is quite analogous to that of a passenger on a public carrier who is required to accept such means of transportation and to purchase a ticket in the nature of a contract. This Court has consistently decided that it is against public policy to permit a common carrier to limit its liability for its own negligence: (Citations)." In this case, however, we have a private arrangement between two firms without the attendant state regula-

tion that exists with banks and public utilities. The appellant had a choice as to how to protect his property, and whether or not he should obtain insurance. Although protection against burglary is becoming increasingly important, we believe that it has not yet reached the level of necessity comparable to that of banking and other public services.

Nor do we consider this a case of an unconscionable provision, assuming that unconscionability is applicable by adoption of the prevailing rule with respect to the sale of goods. Even under the foregoing reference to the Uniform Commercial Code the limitation of liability under the facts of the case is prima facie conscionable. Furthermore, there is this significant fact pointed out in the opinion of the trial judge: "In our case both plaintiff and defendant are experienced, established business persons. Additionally, plaintiff had for some 20 years prior to the instant contract had a similar type protection with similar type clause, with a competitor of defendant." Thus in this respect the case is comparable to *K & C, Inc. v. Westinghouse Elec. Corp.*, 437 Pa. 303, 308, 263 A. 2d 390, 393 (1970) where the court concluded that "it is clear that the exclusion was not unconscionable here, where the buyer was hardly the sheep keeping company with wolves that it would have us believe."

I would affirm the judgment of the court below.

JACOBS and SPAULDING, JJ., join in this opinion.

OPINION BY CERCONE, J., IN SUPPORT OF REVERSAL:

The facts in this case as found by the trial judge who sat as the fact-finder are as follows:

Plaintiff, who was in the retail fur business, entered into a contract with defendant Security Systems whereby defendant was to provide plaintiff's store with electronic burglar alarm protection. While this contract

was in full force and effect, and had been for several years, a burglary occurred, setting off devices at defendant's headquarters. Plaintiff brought suit in trespass against defendant for losses ensuing from the said burglary, plaintiff alleging negligence, willfulness, and wantonness of the defendant in failing to carry out its duties towards plaintiff's establishment. After trial, the trial judge found, as stated in his opinion, "defendant negligently failed to carry out those duties and render those services which its contract required of it upon the receipt of such alarm, with the result that the burglars were able to get away with merchandise of the value of $38,862.00. The loss of merchandise put plaintiff out of business until he could replenish his stock of goods, to the further loss of $7,318." The trial judge entered an award for the plaintiff, but limited that award to the amount of $312 (plus interest from the date of loss). This award was based on the trial judge's conclusion that this was the sum of the "liquidated damages" provided for in the contract. The provision so relied upon by the trial judge reads as follows: "If there shall, notwithstanding the above provisions, at any time arise any liability on the part of FEPS by virtue of this agreement, whether due to the negligence of FEPS or otherwise, such liability is and shall be limited to a sum equal in amount to the yearly service charge hereunder, which sum shall be paid and received by the Subscriber as liquidated damages."

The plaintiff took exceptions to the findings and conclusions of the trial judge, which exceptions were dismissed by the court en banc with one judge dissenting. This appeal by plaintiff followed.

Neither the court below nor any of the parties to this action at any time prior to oral argument before this court regarded the provision in question as other than what the parties expressed it to be, to-wit: a "liqui-

dated damages" clause. The affirming opinion, however, views the language differently than did the lower court and the parties and refers to it as a "limitation of liability" clause. It apparently views a "limitation of liability" clause as more binding than a "liquidated damages" clause under the circumstances. I cannot agree. If the parties can escape their contractual provisions for liquidated damages because the amount stated is unreasonably disproportionate (either higher or lower) to the actual damages involved, there is no logical reason why the same test of reasonableness should not apply to a contractual limitation of liability. I would hold, therefore, that a contractual *limitation,* as well as a, contractual *liquidation* of damages, is not binding where unreasonable and bearing no relation to the loss that would result from defendant's failure to fulfill the terms of its contract. The limitation in this case "to a sum equal in amount to the yearly service charge hereunder" was clearly unreasonable and arbitrary, bearing no relationship whatever to the damages flowing from defendant's breach. In my opinion this provision, whether viewed as one of liquidated damages or as a limitation of damages, should not be enforced.

Section 2-718 of the Uniform Commercial Code of Sales,[1] which by its expressed title "Liquidation *or Limitation of Damages*" necessarily refers to limitation as well as liquidation of damages, provides: "(1) Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy. A term fixing unreason-

---

[1] 1953, April 6, P. L. 3, §2-718, eff. July 1, 1954. Reenacted 1959, October 2, P. L. 1023, §2, eff. January 1, 1960.

ably large liquidated damages is void as a penalty." The Uniform Commercial Code comment to that subsection 1 is: "A term fixing unreasonably large liquidated damages is expressly made void as a penalty. *An unreasonably small amount would be subject to similar criticism and might be stricken under the section on unconscionable contracts or clauses."* (Emphasis added.)

Section 2-719 of the Code[2] is entitled "Contractual Modification or *Limitation of Remedy"* and subsection 1 of that section states that "subject to the provisions . . . of the preceding section on liquidation *and limitation of damages,* (a) the agreement . . . may limit or alter the measure of damages recoverable under this Article. . ." The official comment to that section is: "1. Under this section parties are left free to shape their remedies to their particular requirements and *reasonable* agreements *limiting* or modifying remedies are to be given effect.

"However, it is of the very essence of a sales contract that at least minimum adequate remedies be available. If the parties intend to conclude a contract for sale within this Article they must accept the legal consequence that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract. *Thus any clause purporting to modify or limit the remedial provisions of this Article in an unconscionable manner is subject to deletion* and in that event the remedies made available by this Article are applicable as if the stricken clause had never existed. Similarly, under subsection (2), where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either

---

[2] 1953, April 6, P. L. 3, §2-719, eff. July 1, 1954. Reenacted 1959, October 2, P. L. 1023, §2, eff. January 1, 1960.

party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article." (Emphasis added.)

The clause here in question (whether viewed as a liquidated damages clause or a limitation of damages clause) unreasonably limits plaintiff's recovery to a return of the service charge and deprives plaintiff of the bargain of his contract. As construed in the affirming opinion, the clause in effect works a rescission of the contract, completely freeing defendant from proper performance of its terms and requiring only a return of the service charge when defendant has failed to properly perform thereunder. The contract thus becomes, in effect, an illusory one with defendant not being bound to perform and plaintiff not being entitled to performance by defendant. By limiting plaintiff's remedy upon defendant's breach to a return of the service charge, the defendant is permitted to effectuate a cancellation of its duties to perform under the contract, leaving plaintiff without the bargained-for performance and without any reasonable compensation for defendant's failure to perform as contracted.

It is my opinion, therefore, that the clause in question is unreasonable and unconscionable and should not be enforced.

I therefore respectfully, but vigorously, dissent from the affirming opinion in this case.

WRIGHT, P. J., and HOFFMAN, J., join in this opinion.