## Pulte Home Corp. v.
## Industrial Valley Title Insurance Co.

*Walter W. Wilt*, for plaintiff.
*David E. Lehman*, for defendant.

SHUGHART, *P. J.*, June 18, 1975—Defendant, Industrial Valley Title Insurance Company, has filed preliminary objections to the complaint filed by plaintiff. The complaint alleges that defendant title insurance company, acting pursuant to an oral contract, provided plaintiff with a report of title to a certain tract of land. Relying on that report, plaintiff purchased the tract and defendant then provided title insurance. Pulte Home Corporation later discovered that it could not subdivide the tract into lots 90 feet wide, as it had planned, due to recorded restrictions providing the minimum width of lots to be 100 feet, which restriction the report of title failed to disclose. As a result, plaintiff was forced to rework its subdivision plans to provide three less lots than previously planned.

The complaint set forth the following theories of recovery: (1) negligence in searching title; (2) breach of the oral contract to provide an accurate title report; and (3) breach of the title insurance

contract. Under each theory of recovery, plaintiff has claimed identical damages as follows:

| | | |
|---|---|---:|
| (a) | Anticipated profit on three units @ $8,360 ...................... | $25,080 |
| (b) | Loss of use of three lots @ $6,714 ...... | 20,142 |
| (c) | Additional engineering costs ............ | 1,010 |
| (d) | Additional interest from October, 1973 @ 1% per month on $125,000 ........ | 15,000 |
| | | $61,232 |

By way of preliminary objections, defendant contends that damages (a), (b) and (d) above are improper measures of damage and that plaintiff is limited to an action on the title insurance contract by virtue of the following clause contained therein:

"12. *Liability Limited to this Policy*

"Any claim or loss or damage, whether or not based on negligence, and which arises out of the status of the title to the estate or interest covered hereby or any action asserting such claim, shall be restricted to the provisions and conditions and stipulations of this policy."

The quoted clause is akin to a contractual provision to exculpate one from his own negligence in that it operates to limit the causes of action of the injured party. The law does not favor the enforcement of such contracts and will ignore such clauses when the exculpated party is a common carrier, public utility, or one acting under a public duty: Wedner v. Fidelity Security Systems, Inc., 228 Pa. Superior Ct. 67 (1973); Restatement, Contracts, §575. The law of Pennsylvania has expanded the common-law prohibition against exculpatory clauses to apply also to banks whose public duty is evidenced by the extensive governmental regulation of the banking industry: Thomas v. First National Bank of Scranton, 376 Pa. 181 (1954);

Wedner, supra. The relationship of the parties in the instant case is similar to that of a depositor to his bank or of a passenger to the carrier. Further, insurance companies, like banks, are subject to extensive governmental regulation. On the other hand, if the parties are businessmen and the contract has implications as to their private dealings only, the clause may be given full effect: Dilks v. Flohr Chevrolet, 411 Pa. 425 (1963); Restatement, Contracts, §574. It is also possible that plaintiff is not denied an action but, by the nature of the undertaking, his causes are merely merged into one action on the contract of insurance. Inasmuch as the relationship of the parties has not been fully developed and the matter has not been fully presented to the court, it is inappropriate to decide the effect of the clause in question in the preliminary stages of this litigation: Savitz v. Weinstein, 395 Pa. 173 (1959).

Where one is injured by purchasing a defective title to real estate, the measure of damages is the value of the title without the defect less the value of the title with the defect. See Foehrenbach v. German-American Title & Trust Co., 217 Pa. 331 (1907); Fifth Mutual Building Society of Manayunk's Appeal, 317 Pa. 161 (1935); Annot. 60 A.L.R. 2d 972, 977 (1958). Also recoverable are increased expenses incurred in using the land which are directly and naturally caused by the existence of the previously undiscovered defect of title: Pennsylvania Laundry Co. v. Land Title and Trust Co., 74 Pa. Superior Ct. 329 (1920); Annot., 60 A.L.R. 2d 972, 979 (1958). Applicable to the case at bar is the Pennsylvania Laundry case, supra, in which plaintiff purchased a lot and insured its title with defendant title insurance company. The abstract of title failed to note that the land was

subject to an easement for a right-of-way in favor of a third party. It was held that plaintiff could recover for the loss of use of the land as well as increased costs of construction incurred in building a necessary offset in the wall of the building abutting the easement. The Pennsylvania Laundry case is apposite insofar as the defects of title in the instant case have allegedly caused plaintiff to incur increased expenses in the use of the tract in question. The similarity, however, does not extend to damages for loss of use. In Pennsylvania Laundry, plaintiff was denied the right to use the land in any way except the established use. Such a loss was tantamount to the loss of possession of the property. In contrast, the instant plaintiff has not totally lost the use of three lots or of any portion of the tract, nor is he bound to use the land as it is presently used; he is merely restricted in his use of the tract. The measure of his loss, then, is the difference, if any, between the market value of a tract subdivided into 90-foot lots less the market value of the same tract which may be subdivided into lots of 100-foot minimum width.

Damages further cannot be allowed for profits lost on the anticipated sale of dwellings which have not been constructed. No case has been discovered that has gone farther than Pennsylvania Laundry Co. v. Land Title and Trust Co., supra, in allowing consequential damages for injury to title to real estate. See, e.g., Annot., 60 A.L.R. 2d 972 (1958). Indeed, even if the instant case did not deal with real estate, the lost profits based on subsequent collateral undertakings would still be too remote and too speculative to be recovered: Clyde Coal Co. v. Pittsburg & Lake Erie R. R. Co., 226 Pa. 391 (1910).

Finally, the claim for "additional interest" must be stricken from the complaint for failure to apprise defendant of the factual basis for the claim: National Novelty Co. v. Zuvich, 71 Dauphl. 372, 16 D. & C. 2d 359 (1958). In its present form, the complaint does not indicate how the additional interest expense is related to the alleged injury.

Defendant has presented its preliminary objections in the form of a demurrer and has requested the court to force plaintiff to replead. In Pennsylvania Power & Light Co. v. Breach, 10 Cumb. 54, 19 D. & C. 2d 102 (1959), we held that "[a]n incorrect statement of the measure of damages contained in a complaint is not sufficient ground to warrant striking off the complaint or sustaining a demurrer. . . ."

## ORDER

And now, June 18, 1975, for the reasons set forth above, paragraphs 17(a), (b) and (d); 20(a), (b) and (d); and 28(a), (b) and (d) be and are hereby stricken from the complaint, with leave granted plaintiff to amend within 20 days.