## Lieber v. Smith

*Gerard Bruderle*, for plaintiffs.
*Dale Larrimore*, for defendant.

648

TAKIFF, *J.*, May 8, 1980—Plaintiffs filed a complaint in trespass and assumpsit seeking to recover for the value of goods defendant Standish Smith, operator of the Presidential Body and Service Garage, allegedly failed to return after plaintiffs had stored them in defendant's garage facility. The case was tried before this court sitting without a jury on March 10, 1980. For the reasons set forth below, we deny the relief sought.

Defendant operates his business in a three story structure located as part of the apartment complex known as Presidential Apartments, City Avenue in Philadelphia. Access to the garage type building is by ramps; the first floor is used for auto body and repair work, the second for "dead" vehicle parking and storage, and the third for regular parking. On September 8, 1976, defendant advertised his facility in the Philadelphia Inquirer Classified section, as follows:

"Rent space eqpd auto body rep or storage vic City Li GR7-2640."

Plaintiffs, then seeking a place to store a boat and various items of personalty, responded to this ad and on September 14, 1976, entered into a written agreement wherein plaintiff James Lieber, as lessee, leased "one (1) car space from lessor" for a term from September 15, 1976 ending September 15, 1977, at the monthly rental of $25 "for dead storage" of property described as "Boat Oday 20 + misc. house furnishings." On September 19, 1976, Mr. Lieber placed miscellaneous items in the designated area which was located on the second floor and storage area of the garage. This floor was a typical garage parking area marked by painted lines on the floor demonstrating the allocated

space. Plaintiffs' goods were stacked in boxes between such lines and were visible and accessible to anyone entering the second floor garage. Plaintiff never brought the boat to this site.

Of the remaining "parking spaces" on the second floor, a few were used for the storage of property and others were leased by tenants of the adjacent Presidential Apartments for vehicle parking. At the time plaintiff delivered his goods to the space allocated, the majority of parking spaces were vacant. With the exception of plaintiffs, however, those parties utilizing spaces for storage of goods had constructed fences or walls around their occupied areas. Access to the second floor garage was gained through a typical garage door which was kept open during daytime business hours and opened or shut via an electric combination door lock at night for which each occupant received appropriate operational instruction.

At least one time after the initial delivery of goods, plaintiff visited the premises. Sometime between September 1976 and January 1977, the goods were moved from the location originally assigned to another area, closer to the garage entrance. On January 14, 1977, plaintiffs discovered that a substantial part of their property was missing. Plaintiffs here assert that defendant, as a bailee, or a warehouseman, is responsible for the loss of their property.

## DISCUSSION

A bailment has been defined as a delivery or deposit of goods in trust under an implied or express contract that the trust will be faithfully executed, and that after the purpose of the bailment has been

fulfilled, the goods will be returned to the person who delivered them: Wright v. Sterling Land Company, Inc., 157 Pa. Superior Ct. 625, 43 A. 2d 614 (1945). See 5 P.L.E. Bailments, §1; and 8 C.J.S. Bailments, §1. The determinative factor in resolving whether a relationship should be characterized as a bailment, with the corresponding duties and responsibilities of that status, is whether the alleged bailor delivered custody and control of the personalty to the alleged bailee: Taylor v. Philadelphia Parking Authority, 398 Pa. 9, 156 A. 2d 525 (1959); Sparrow v. Airport Parking Co. of America, 221 Pa. Superior Ct. 32, 289 A. 2d 87 (1972). The quantum of such possession or control in the bailee over the personalty must be such that the bailee may effectively exclude the possession of the owner for the period of the bailment: McBride v. McNally, 243 Pa. 206, 89 Atl. 1131 (1914); Sparrow v. Airport Parking Co. of America, supra; Maher v. Chapins Lunch Co., 119 Pa. Superior Ct. 213, 180 Atl. 739 (1935); see also, 3 U. Pitt. L.Rev. 51 (1936).

The relationship between plaintiffs and defendant herein does not approximate that of bailor-bailee. The parties' written agreement is a modification of a form designed for the lease of a car space for either "live" or "dead" parking, i.e., for the lessee's own parking or for the delivery and return of the vehicle by a garage attendant. This agreement, in substance and intendment, clearly describes a lease rather than a receipt for bailed goods. It denominates the arrangement as being between "lessor" and "lessee." Husband-plaintiff delivered his goods, unloading them and stacking them in the allocated space without further disclosure to defendant as to the nature of the goods or the contents of the boxes and without any supervision from de-

fendant. Plaintiffs were provided with full information covering the operation of the electronically controlled garage door and therefore had unrestricted access to their belongings. The garage itself was open and accessible for use by numerous other "tenants," day and night. Since plaintiffs made no delivery to defendant of exclusive possession and control of their property, we conclude that no bailment was created.

Alternatively, plaintiffs contend that defendant is a warehouseman, and, as such, is liable for the damages occasioned by his negligence in storing the goods. Plaintiffs' contention on this score is bottomed on the assumption that the written agreement constitutes a "warehouse receipt" for the delivered goods.

The Uniform Commercial Code of April 6, 1953, P.L. 3, defines a "warehouseman" as "a person engaged in the business of storing goods for hire," 12A P.S. §7-102(1)(h), and mandates that goods deposited with a warehouseman for such purpose be handled with reasonable care: 12A P.S. §7-204(1). The evidence adduced at trial compels the conclusion that defendant was not in the business of "storing goods for hire," but rather operated an auto repair shop and leased available space to tenants in the parking garage. Plaintiffs' characterization of the parties' written agreement as a "warehouse receipt" is wholly without merit. A warehouse receipt is a written acknowledgment of the receipt of designated property in the warehouseman's possession for storage. The agreement involved herein was entered into prior to any delivery of goods, which indicates that it was not intended to serve as a receipt. Further evidence that this was not a receipt is found in the descrip-

tion of the goods embodied in the agreement: "Boat Oday + misc. house furnishings." The boat was never brought to the premises and the house furnishings were not otherwise identified or described, a looseness hardly consistent with the functions to be performed by a warehouseman. Finally, the document does not indicate that defendant has or will take possession of plaintiffs' goods.

While a warehouse receipt need not be in any particular form, 12A P.S. §7-202(1), the instant agreement affirmatively rebuts rather than supports plaintiffs' contention that defendant was acting as a warehouseman.

Even if we were persuaded to find that the subject agreement was a warehouse receipt, plaintiffs' claim would fail as they would be bound by the explicit exculpatory clause contained therein, which provides: "Lessor assumes no responsibility in the event of loss, damage or accident to Lessee's [property] or its contents or, in case of injury to its occupants." The Uniform Commercial Code recognizes the validity of such exculpatory clauses contained in warehouse receipts: 12A P.S. §7-204(2).*

Having concluded that defendant is neither a warehouseman nor a bailee, thus not being bound by operation of law by any of the constraints imposed upon a party in such a legal status, we turn finally to the terms of the written agreement pursuant to which plaintiffs' goods came to be upon defendant's premises. Although an explicit declaration is made "that Lessor will make every reasonable effort to protect Lessee's/car property . . .,"

---

*The only exception to this rule is where a warehouseman intentionally breaches a material provision of the contract: Harding v. Harrisburg Storage Co., 197 F.Supp. 630 (M.D. Pa. 1961), which plaintiffs herein have not alleged.

the one-page agreement explicitly relieves defendant of all responsibility for "loss, damage or accident to Lessee's car property." Written contracts define the contracting parties' rights, powers, privileges and obligations, Miller v. Weller, 288 F. 2d 438 (3d Cir. 1961), and a valid exculpatory clause will preclude recovery: Dilks v. Flohr Chevrolet, 411 Pa. 425, 192 A. 2d 682 (1963). Concededly, such clauses are to be strictly construed against the party invoking their protection, Kotwasinski v. Rasner, 436 Pa. 32, 258 A. 2d 865 (1969), and have been found unacceptable when contrary to public policy. Our courts have refused to enforce exculpatory clauses where there is such a disparity of bargaining power that one is denied a free choice and is forced to accept the clause by the necessities of the situation. See, e.g., Boyd v. Smith, 372 Pa. 306, 94 A. 2d 44 (1953) (violation of statute designed to protect human life); Turek v. Pa. R.R. Co., 361 Pa. 512, 64 A. 2d 779 (1949) (common carriers); Wedner v. Fidelity Security Systems, Inc., 228 Pa. Superior Ct. 67, 307 A. 2d 429 (1973) (banking services); and see U.C.C. §2-719(3), 12A P.S. §2-719 (consumer goods).

In the matter sub judice, plaintiffs and defendant were private parties bargaining at arms' length. Plaintiffs clearly sought a utilization of space intended for the storage of motor vehicles, with the accompanying characteristics of free ingress and egress and mobility, for a nontransient use. Even if some inference of negligence on the part of defendant might be gleaned from the mere fact of the unauthorized removal of some of the goods, a more persuasive conclusion of contributory negligence on the part of plaintiffs is to be found in leaving a stack of boxes containing personal possessions in an open, clearly available area, secured only by

654

some type of cover or tarpaulin cast over the goods. Plaintiffs were in no way compelled to enter into an adhesion contract but rather reached agreement with defendant modifying the use to which the premises were normally put for plaintiffs' own accommodation. They signed the contract containing an explicit exculpatory clause. Prior to entering into the agreement, plaintiffs inspected the premises and were familiar with its characteristics as a garage: accessible via ramps, with a door operated by an electronic control and windows taped with signal tapes, and using a resident employe of defendant to deliver cars to tenants in the apartments and to generally supervise the security of the building. Plaintiffs placed their goods in storage and retained access to them. There is no indication from the evidence adduced at trial that defendant failed to perform his contractual undertakings. Defendant was not a guarantor of the safety of plaintiffs' property. The loss of some of plaintiffs' possessions is unfortunate; however, under the totality of the circumstances here presented, we are persuaded to enter a verdict for defendant.

In view of our finding that the property designated for storage was lost without the fault of either party, we conclude that the purpose of the rental agreement was frustrated, and that the parties' contractual obligations were therefore terminated: Greenfield v. Kolea, 475 Pa. 351, 380 A. 2d 758 (1977). It follows that defendant's counterclaim for rent due which had accrued after the date of the loss must be dismissed.