NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 10-2901 & 10-2902
_____

JEROME GREENSPAN
MARLENE GREENSPAN
TRAVELERS INDEMNITY CO,
As Subrogee of Jerome * Marlene Brown

JEROME GREENSPAN
MARLENE GREENSPAN,

*Plaintiffs-Appellants/Cross-Appellees*

v.

ADT SECURITY SERVICES INC.,

*Defendant-Appellee/Cross-Appellant*

Appeal from the United States District Court for the
Eastern District of Pennsylvania
Magistrate Judge: The Honorable Linda K. Caracappa
(No. 2-06-cv-04181)

Argued: May 24, 2011

Before: McKEE, *Chief Judge*, Rendell and Vanaskie, *Circuit Judges*

(OPINION Filed September 20, 2011)

Gerald W. Spivack, Esq. (argued)
Valerie A. Pedicone, Esq.
Spivack & Spivack
1528 Walnut Street

Suite 710
Philadelphia, PA 19102

Daniel M. Brown, Esq.

William J. Ferren & Associates
10 Sentry Parkway
Suite 301
Blue Bell, PA 19422-0000

*Attorney for Plaintiffs-Appellants/Cross-Appellees*

Charles C. Eblen, Esq. (argued)
Shook, Hardy & Bacon
2555 Grand Boulevard
Kansas City, MO 64108-2613

Tiffany M. Alexander, Esq.
Campbell, Campbell, Edwards & Conroy
690 Lee Road
Suite 300
Wayne, PA 19087

*Attorney for Defendant-Appellee/Cross-Appellant*

McKEE, *Chief Judge*.

Jerome Greenspan and Marlene Greenspan appeal the order of the District Court

for the Eastern District of Pennsylvania granting summary judgment in part and denying

summary judgment in part to ADT on the Greenspans' claim for breach of an alarm

services contract they entered into with ADT. ADT has filed a cross appeal. For the

reasons that follow, we will affirm the district court's order limiting the Greenspans'

recovery to $500. However, we will reverse the district court's denial of summary

judgment with respect to the Greenspans' tort claims, which we hold are barred by

2

Pennsylvania's gist of the action doctrine.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The district court had diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are diverse and the matter in controversy is greater than $75,000.  Pursuant to 28 U.S.C. § 1292(b), the district court had jurisdiction to issue an interlocutory decision granting partial summary judgment and certifying that decision for interlocutory appeal. We have jurisdiction pursuant to 28 U.S.C. § 1292.

We review the district court's partial grant of summary judgment *de novo* and apply the same test as the district court.  *See MBIA Ins. Corp. v. Royal Indem. Co.*, 426 F.3d 204, 209 (3d Cir. 2005).  Summary judgment is appropriate where there are no genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). We view all facts in the light most favorable to the non-moving party.  *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 535 (3d. Cir. 2007).

A federal court exercising diversity jurisdiction must apply the substantive law of the appropriate state.  *Erie R.R. Co. v. Tompkins*, 304 U.S 64, 78 (1938).  In the absence of a definitive ruling by a state's highest court, we must predict how that court would rule if faced with the issue.  *Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1046 (3d Cir. 1993).

We write primarily for the parties and therefore will only set forth those facts that are helpful to our brief discussion of the issues.

3

The alarm services contract that the Greenspans entered into with ADT contained the following limitation of damages provision: "**CUSTOMER ACKNOWLEDGES AND AGREES THAT IF ANY LOSS OR DAMAGE SHOULD RESULT FROM THE . . . MONITORING SERVICE** [of the fire alarm system], [ADT's] **LIABILITY, IF ANY, FOR SUCH LOSS OR DAMAGE SHALL BE LIMITED TO A SUM NOT GREATER THAN FIVE HUNDRED DOLLARS ($500)."** (emphasis in the original). (J.A. 83).

However, the contract allowed the Greenspans to increase the limit on liability pursuant to the following provision: "**CUSTOMER MAY REQUEST AN INCREASED LIMITED LIABILITY BY OFFERING TO PAY AN ADDITIONAL AMOUNT OF TEN (10%) PERCENT OF THE INCREASED LIMIT**." (emphasis in the original). (J.A. 83). The contract also stated: "[u]nder no circumstances shall [ADT] be liable to CUSTOMER or any other person for incidental or consequential damages of any nature in excess of [$500]. . . whether alleged to result from [ADT's] breach of warranty, negligence, through strict liability or otherwise."[1] (J.A. 83).

---

[1] A limitation of damages clause which limits potential damages to an amount that is less than the $75,000 threshold for diversity jurisdiction will usually prevent a federal court from obtaining subject matter jurisdiction. *See Valhal Corp. v. Sullivan Assoc. Inc.*, 44 F.3d 195 (3d Cir. 1995). Here, however, the Greenspans argue that even if the limitation of damages provision is enforceable, it cannot apply to damages that can be recovered for gross negligence. Accordingly, despite the limitation of damages clause here, we can exercise subject matter jurisdiction based on the face of this "well pleaded complaint." *See Farina v. Nokia, Inc*., 625 F.3d 97, 108 (3d Cir. 2010).

4

After the Greenspans signed the contract with ADT, an ADT technician removed a defective smoke detector from the second floor of the Greenspans' home. The Greenspans allege that they repeatedly called ADT to ask when the smoke detector would be replaced while they continued to pay ADT's monthly service charge.

ADT claims that it informed the Greenspans that it was difficult to fix the smoke detector because parts were no longer available. In any event, it is undisputed that ADT never replaced the smoke detector and that the Greenspans had no functioning alarm system on the second floor of their home for over three years.

On September 5, 2004, a fire broke out on the second floor of the Greenspans' residence. Because the smoke detector on that floor had been removed, the fire was not detected in time to prevent approximately $400,000 in damages to the Greenspans' personal property. The Greenspans made a claim under their homeowners' insurance policy and received over $200,000 from Travelers Insurance on that policy. Travelers then sued ADT in Pennsylvania state court as subrogee, alleging three counts: (1) negligence, gross negligence, carelessness, willful, intentional and/or wanton misconduct; (2) breach of warranty; and (3) breach of contract. The Greenspans also filed a complaint against ADT, alleging claims of negligence and breach of contract. Thereafter, on September 19, 2006, ADT removed the action to the district court on the basis of diversity jurisdiction.

ADT subsequently moved for summary judgment, arguing that the limitation of liability provision capped its liability to $500 for all of the Greenspans claims' related to the contract.  The district court granted partial summary judgment to ADT.  The court held that the $500 limitation of liability clause was enforceable and applied to all of the Greenspans' claims.  However, the district court concluded that the Greenspans' tort claims were not barred by the gist of the action doctrine.

We thereafter certified this interlocutory appeal to determine if the limitation of liability clause applied.  We also granted ADT's cross-petition to appeal the district court's holding that the gist of the action doctrine did not bar the Greenspans' tort claims.

## II.  ANALYSIS

### A. Whether the $500 Limitation of Liability Clause is Enforceable

The Greenspans contend that the district court erred in failing to find the $500 limitation of liability clause unenforceable.  They argue that the clause is unreasonable and should not be upheld because it limited recovery to $500, the approximate value of the ADT's annual service charge ($419.88), yet they suffered over $400,000 in personal property damage.  The Greenspans claim that capping the liability to such a nominal amount essentially removed all incentive for ADT to perform with due care.

In *Valhal Corp. v. Sullivan Assoc*., *Inc*., 44 F.3d 195 (3d Cir. 1995), we explained that "Pennsylvania appellate courts recognize that there are differences between a contract which insulates a party from liability and one which merely places a limit upon

6

that liability and that "[t]he difference between the two clauses is . . . a real one." *Id*. at 202 (quoting *Posttape Assocs. v. Eastman Kodak Co*., 537 F.2d 751,755 (3d Cir. 1976)). Thus, we found that "presumably because of that difference, we find no Pennsylvania cases in which a limitation of liability clause had been disfavored." *Id*.

Pennsylvania state courts have upheld limitation of liability clauses in contracts that are governed by the Uniform Commercial Code as well as in contracts not governed by the UCC, such as the one before us today.[2] *See, e.g., New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp*., 564 A.2d 919, 929 (Pa. Super. Ct. 1989) (upholding limitation of liability clause in contract governed by the UCC); *Magar v. Lifetime*, 144 A.2d 747, 749 (Pa. Super. Ct. 1958) (same); *Vasilis v. Bell of Pa*., 598 A.2d 52, 54 (Pa. Super. Ct. 1991) (upholding limitation of liability clause in contract not governed by the UCC); *Behrend v. Bell Tel. Co*., 363 A.2d 1152, 1165 n.16 (Pa. Super. Ct. 1976) (same).

Moreover, Pennsylvania courts have found that "[c]lauses limiting liability in security alarm contracts have uniformly been upheld[.]" *See Lobianco v. Prop. Prot., Inc*., 437 A.2d 417, 420 (Pa. Super. Ct. 1981). This is true even where the cap on liability is well below the total amount of damages. *See Wedner v. Fidelity Sec. Sys., Inc*., 307 A.2d 429, 432 (1973) (plurality opinion holding that the plaintiff was bound by a clause limiting the defendant's liability to the annual service charge of $312 notwithstanding

---

[2] At oral argument, counsel for the Greenspans acknowledged that this case is not governed by the UCC because it involves a service contract, not the sale of goods. *Emerson Radio Corp. v. Orion Sales, Inc*., 253 F.3d 159, 170 (3d Cir. 2001).

7

that plaintiff had suffered $46,180 in damages).

The Greenspans insist that this case is different because they are not sophisticated parties who are experienced with business dealings, and their damages were specifically to their personal belongings, not to commercial property. We certainly do not minimize their loss, nor are we insensitive to their plight. They have clearly experienced the kind of hardship and loss that may well be the greatest fear of all homeowners. We also appreciate that the Greenspans are not sophisticated parties, and therefore did not have the same level of bargaining power afforded to ADT. Like most consumers, Mr. Greenspan likely glanced over the contract quickly and signed it without taking the time to read the "fine print."

Nevertheless, ADT is a company that provides alarm system services – it is not an insurer and never claimed to be one. Indeed, the service tickets that the Greenspans signed when ADT personnel came to their home in an attempt to repair the smoke detector, explicitly stated that "**IT IS UNDERSTOOD THAT ADT IS NOT AN INSURER, THAT INSURANCE, IF ANY, SHALL BE OBTAINED BY THE CUSTOMER AND THAT THE AMOUNTS PAYABLE TO ADT HEREUNDER ARE BASED UPON THE VALUE OF THE SERVICES.**" (emphasis in the original) (J.A. 104, 115). The relatively low yearly service fee that the Greenspans paid reflects the fact that ADT was not the Greenspans' insurer, it was not in the business of assessing risk, and its annual service fee could not have been reasonably based on the value of the

8

real property protected by ADT's alarm system.

As the court in *Wedner* noted, the parties "had a choice as to how to protect [their] property, and whether or not [they] should obtain insurance." 307 A.2d at 432.[3] We agree. Had the Greenspans wanted to increase ADT's limit on its liability, they had the option to do so under the terms of their contract.[4] *See E.H. Ashley & Co.*, 907 F.2d at 1278-79 (not inappropriate for the parties to place on user the onus of "'buy[ing] any desired amount of insurance at appropriate rates '"); *Leon's Bakery, Inc.,* 990 F.2d at 49 (2d Cir. 1993) (noting that "the price [of the fire alarm] does not generally include a sum designed to anticipate the possible need to pay the purchaser the value of the property that the system is to protect. The owner . . . of the property is in a far better position than the alarm system seller to know the property's value and to bargain with an insurance company for appropriate coverage and an appropriate premium"). Therefore, we hold

_____

[3] At oral argument, counsel for the Greenspans correctly pointed out that *Wedner* has no precedential value because it was a plurality opinion. *See Interest of O.A.*, 717 A.2d 490, 496 (1998) ("While the ultimate order of a plurality opinion, i.e., an affirmance or reversal, is binding on the parties in that particular case, legal conclusions and/or reasoning employed by a plurality certainly do not constitute binding authority."). Nevertheless, the reasoning in a state court's plurality opinion can be very helpful when predicting how the state's highest court would rule. *Zinn v. Gichner Sys. Group,* 880 F.Supp. 311 (M.D. Pa. 1995).

[4] We recognize that no reasonable consumer would have opted to increase the limitation of liability under the terms of ADT's contract because it would require the consumer to "pay an additional amount of ten (10%) percent of the increased limit." (J.A. 83). This would have resulted in a payment of approximately $40,000 a year for an annual service that was otherwise only $419.88. However, that does not transform this alarm company into an insurer of real property.

9

that the $500 cap on liability in the ADT contract is valid and enforceable under Pennsylvania law.

## B. Whether the Gist of the Action Doctrine Bars the Greenspans' Tort Claims

In its cross appeal, ADT argues that the district court erred in allowing the Greenspans' tort claims to survive summary judgment because the gist of the action doctrine bars such claims. The Greenspans counter that ADT had a duty to replace the defective smoke detector that was independent of its duty under the terms of the contract.

In Pennsylvania, the "gist of the action doctrine[] . . operates to preclude a plaintiff from re-casting ordinary breach of contract claims into tort claims." *Hart v. Arnold*, 884 A.2d 316, 339 (Pa. Super. Ct. 2005). The nature of the wrong attributed to the defendant is "the gist of the action, the contract being collateral." *Mirizio v. Joseph*, 4 A.3d 1073, 1080 (Pa. Super. Ct. 2010). "The important difference between contract and tort claims is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie from the breach of duties imposed by mutual consensus." *Hart*, 884 A.2d at 339.

ADT's contract with the Greenspans imposed a duty to monitor, maintain, and repair the alarm system, and ADT clearly breached that duty when it failed to replace the Greenspans' defective smoke detector. However, ADT's obligations to the Greenspans arose solely out of the contract. We know of no legal theory that would allow us to impose some objective social duty on an alarm company outside of the duties imposed by

10

a contract, and we are unconvinced by the Greenspans' attempt to have us recognize such a duty. There simply is no separate "tort" duty to monitor an alarm system.

Indeed, in their own complaint, the Greenspans alleged that "The **contract** required [ADT] to keep all smoke detectors on said residence in working order." (emphasis added) (J.A. 39). The contract certainly cannot be viewed as "collateral" to the Greenspans' claims when their own complaint invoked the contract as the origin for their tort claim. ADT's obligation to monitor and maintain the Greenspans' alarm services system did not arise from an independent duty under tort law, but under the explicit terms of their agreement. *See Bash v. Bell Telegraph Co. of Pa.*, 601 A.2d 825, 830 (Pa. Super. Ct. 1992) (affirming the dismissal of a negligent claim because the "the parties' obligations are defined by the terms of the contract, and not by the larger social policies embodied in the law of torts."). Therefore, we hold that the gist of the action doctrine bars the Greenspans' tort claims.[5]

### III. CONCLUSION

For the foregoing reasons, we will affirm the district court's order granting

---

[5] The Greenspans also contend that even if the $500 cap on liability applies to their breach of contract and negligence claims, it does not apply to their claims of gross negligence because the contract stated that the cap applies only to claims resulting "from [ADT's] breach of warranty, negligence, through strict liability of tort or otherwise." (J.A. 84). The Greenspans argue that gross negligence is a claim distinct from ordinary negligence, and thus does not fall within the $500 limitation on liability.

Because we find that all of the Greenspans' tort claims are barred by the gist of the action doctrine, the Greenspans' argument on this point is now moot. We issue no opinion on whether a claim of gross negligence could be raised if it arose out a separate duty that was distinct from the duties set forth in a contract.

11

summary judgment in part and limiting the Greenspans' recovery to $500 pursuant to the limitation of liability clause in the contract. We will reverse the district court's denial of summary judgment to ADT with respect to the Greenspans' tort claims, which are barred under the gist of the action doctrine.